## DE BOGORY et al. v. CHAPMAN et al.
### No. 11468.

Court of Civil Appeals of Texas. Dallas. Sept. 22, 1934.

Rehearing Denied Oct. 20, 1934.

Eugene De Bogory, of Dallas, and Slay & Simon, of Fort Worth, for plaintiffs in error.

Pollard, Lawrence & Lux and Tom L. Beauchamp, all of Tyler, for defendants in error.

LOONEY, Justice.

During the year 1925, C. M. Joiner, having obtained certain oil and gas leases on lands in Rusk county, Tex., formed the acreage into three groups, called syndicates; syndicate No. 2 was composed of the four leases, aggregating 321 acres, including what is known as the Finney lease of 102 acres, which, with other lands, was on June 27, 1925, leased to Joiner by Mrs. Finney, for a period of five years (expiration date June 27, 1930). During the years 1927 and 1928, Joiner issued and sold to purchasers certain certificates evidencing undivided interests in these syndicates. The material provisions of this certificate are as follows, "C. M. Joiner Lease and Oil Well Syndicate, Overton, Texas. Number ———. November —, 1927. We, the undersigned, hereby subscribe ——— Dollars for ——— undivided acres in the following syndicate leases: 102 acres, being the A. P. Finney lease," mention-

ing three other leases, all aggregating 321 acres; also providing that the amount subscribed and paid entitled the holder to an interest in the first oil or gas well to be drilled on what was known as the Overton block, situated in Rusk county, Tex., the interest to be as the amount paid is to the value of the well, estimated at $75,000, including the 80 acres upon which the well was to be drilled. The certificate obligated the holder to pay, on January 1st each year, at the office of C. M. Joiner in Dallas, Tex., rentals of $1 per acre per year on the amount of acreage represented by the certificate, stating, "The expiration date of the above leases are as follows: A. P. Finney lease June 27, 1930," followed with recitation of the expiration date of the other leases composing the syndicate; further providing that, in case of the death of the purchaser of the certificate, the unpaid balance due thereon will be considered as paid, and a paid-up contract will be delivered to the estate of the purchaser. The certificates were all signed by C. M. Joiner, or some one authorized to act for him, and were also signed by the purchaser, but were not acknowledged by Joiner, nor as to him were they probated for record; but after the discovery of oil in the vicinity (about October 5, 1930), certain certificate owners made affidavit stating their ownership of the interest in the syndicated acreage evidenced by the certificate; also, in due form, acknowledged same, and the affidavit, acknowledgment, and certificate were then placed of record in the deed records of Rusk county, Tex.

On March 18, 1929, prior to the expiration of the Finney lease, Joiner secured from Mrs. Finney another lease on the same lands, in the usual form of oil and gas leases, but the latter made no reference to the existence of the first lease, nor, by its terms, was it connected with, or a continuation of, the first lease.

The record fails to disclose that Joiner issued or sold any certificates based upon the second lease, but on October 18, 1930, after the discovery of oil in the vicinity, he conveyed to E. L. Evans (through whom Chapman and Taylor claim) 40 acres described by metes and bounds off the east side of the 102 acres, one of the tracts in syndicate No. 2, against which, during the life of the first lease, certificates were issued and sold. This conveyance to Evans was, by its terms, based upon the second lease from Mrs. Finney to Joiner (of date May 24, 1929), from which we quote the following, "Agreement made and entered into the 18th day of March, 1929, by and between Julia M. Finney, a single woman, of

Overton, Texas, hereinafter called lessor: Witnesseth: that said lessor for and in consideration of One Dollar cash in hand paid the receipt of which is hereby acknowledged and of the covenants and agreements hereinafter contained on the part of lessee to be paid, kept and performed, has granted, demised, leased and let, and by these presents does grant, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and laying of pipe lines and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the County of Rusk, State of Texas, described as follows, * * * " describing four separate parcels of land, including the 102 acres involved in this controversy; providing that the lease shall remain in force for a term of ten years from its date, and thereafter as long as oil and gas, or either, is produced from said land by the lessee, followed by the obligations assumed by the lessee, all in the usual form of oil and gas leases.

Joiner and Evans also agreed in writing that the conveyance or assignment of the 40 acres should be placed in the First National Bank of Overton, Tex., with check by Chapman, for $4,000, to be held by the bank until acceptance of title by Evans; Evans agreeing to begin placing timbers on the 40-acre tract for the erection of a derrick within five days, and to drill a well thereon to the depth of at least 3,700 feet. Evans' agreement in these respects was subsequently complied with. After due examination, Evans accepted title, and, on February 18, 1931, Joiner authorized the bank to deliver the conveyance, which was done, and the same was placed of record; the draft for $4,000 was collected and credited by the bank to Joiner (whose affairs, however, were at that time in the hands of a receiver, as hereinafter shown).

On October 27, 1930, a few days after the date of the Joiner-Evans contract of October 18, 1930, and after Evans had taken possession of the land by placing thereon materials for the erection of a derrick, C. R. Adkins et al., certificate holders, instituted this suit against Joiner, seeking an accounting, the establishment of their title to the interest represented by the certificate, for partition, and praying for the appointment of a receiver to take charge of the various and sundry properties of Joiner, held individually, and as trustee.

On October 31, 1930, Joiner answered the suit and filed a cross-bill, also prayed for the

appointment of a receiver, and accordingly, on October 31, 1930, the court appointed Ernest R. Tennant receiver, with authority to take charge of all and singular said properties, including the 102 acres known as the Finney lease above mentioned. In due time, after the consummation of their deal with Joiner, Evans, Chapman, and Taylor, defendants in error, intervened in the receivership suit, set up their rights to the 40 acres, and prayed that the same be set aside to them.

After these occurrences, on March 18, 1931, Joiner, individually and as trustee, assigned and conveyed to Eugene De Bogory, trustee for Claud F. Morgan, all the remaining interest owned and held by him in and to three tracts of land, aggregating 454 acres, including the 102-acre tract in controversy; also, on May 31, 1931, Joiner, as trustee, conveyed to De Bogory, as trustee aforesaid, certain specific undivided interests in the syndicates, including the 102-acre tract, the same being interests evidenced by certificates theretofore issued by Joiner during 1927 and 1928, and repurchased by him; the certificates so transferred to De Bogory aggregated a 94-acre undivided interest in and to the 321 acres, constituting syndicate No. 2. Afterwards, De Bogory, trustee, and Morgan, beneficiary, intervened in the suit, set up the rights obtained under and by virtue of the instruments executed by Joiner, above described, and contested the claim of Evans, Chapman, and Taylor to the 40-acre tract conveyed to Evans by Joiner.

In all the writings mentioned herein, both as grantor and grantee, Joiner is described as trustee; but the instruments fail to disclose the identity of either a beneficiary or beneficiaries.

On hearing, the court found that the rights acquired by plaintiffs in error, under and by virtue of the assignment and conveyance to them by Joiner, were inferior and subordinate to the rights of defendants in error; therefore, adjudged that plaintiffs in error had no right, title, or interest in and to said leasehold, or the proceeds derived from the sale of same by the receiver, and that they take nothing by reason of their contest. The judgment is lengthy, and include the court's conclusions of fact as well as of law, established the priorities of different claimants, and directed the receiver to distribute and pay out accordingly the proceeds arising from the sale of the properties.

This appeal simply involves and brings under review the judgment rendered on the contest between plaintiffs in error and defendants in error. As pertinent to this phase of the case, the court found that, subsequent to the record of the conveyance of the 40-acre tract from Joiner to Evans, and after drilling operations thereon were begun by Chapman, the conveyance and assignment from Joiner to plaintiffs in error were executed; that at that time they had notice and knowledge of the claims and rights of defendants in error; and that any interests thus acquired by plaintiffs in error were subordinate and inferior to the rights of defendants in error.

The different contentions of plaintiffs in error on the appeal are: That the court erred in adjudging that defendants in error were entitled to recover against them, under the doctrine of an after-acquired title, in that the interests in the leasehold estate, reacquired by Joiner from certificate holders, after his conveyance to Evans under warranty of title, were in a different right and capacity from that in which he had conveyed to Evans; also because the conveyance by Joiner to Evans was of a specifically described 40-acre tract, whereas the titles subsequently reacquired by Joiner from certificate holders were of a different character, being undivided interests in the syndicate of 321 acres, which included the 102-acre tract, and because, even if such interests in the leases were reacquired by Joiner in such a capacity and were of such a nature, as under the doctrine of an after-acquired title would pass, by estoppel, to defendants in error, nevertheless they would only be entitled to an undivided after-acquired interest in the 40-acre tract, and not to an undivided interest in the entire 102 acres.

It will be observed that these several contentions are bottomed upon the assumption that the judgment of the court in favor of defendants in error is defensible, if at all, alone on a correct application of the doctrine of an after-acquired title. To this idea we do not subscribe, as we believe the court's judgment can and should be sustained on the facts, without reference to the applicability whether or not of the doctrine of an after-acquired title.

The certificates of interest in syndicate No. 2, which, as before stated, included the 102-acre tract, so reacquired by Joiner and transferred to plaintiffs in error, were based upon and authorized by the first lease, which, by its terms, expired June 27, 1930, whereas the rights of defendants in error had been previously fixed, and were then being asserted in a plea of intervention in the receivership proceedings. The certificates affecting the 102-acre tract, repurchased by Joiner and trans-

189

ferred to plaintiffs in error, revealed the fact that the lease upon which it was based would expire June 27, 1930, whereas the conveyance of the 40-acre tract by Joiner to Evans, under which defendants in error claim, was by virtue of the second lease from Mrs. Finney to Joiner, which made no reference to the first, and nothing recited therein indicated that it had any connection with the first, or anything that would put any one dealing with Joiner upon notice of the existence of a prior lease.

■ Mr. Joiner testified, however, that he took the second lease for the benefit of those holding certificates issued under the first; but this undisclosed intention, while highly commendable in Mr. Joiner, would not affect the interest of those subsequently dealing with him without notice that he was holding the second lease in trust for the benefit of owners of certificates previously issued under the first.

■ Prior to the repurchase and transfer of certificates to plaintiffs in error by Joiner, the conveyances evidencing the title and rights of defendants in error to the 40-acre tract had been properly placed of record in Rusk county, and they were at the time in actual possession of the land, engaged in drilling an oil well in compliance with their agreement with Joiner; this, in our opinion, constituted both constructive and actual notice to plaintiffs in error of the right, title, and interest in the land claimed by defendants in error.

■ Evans testified that, at the time he contracted for the purchase of the 40-acre tract, Joiner represented that he had a brand new lease and that no one else had any interest in it. Evans stated further that he knew nothing in regard to the claim of any other person in the leasehold. Testifying on this issue, before the master, Joiner, being pressed with questions seeking to develop the fact that, at the time he contracted with Evans for the sale of the 40-acre tract, Evans had knowledge of these outstanding certificates, answered vaguely and inconclusively. He said he had known Evans three or four years, thought Evans knew how witness was raising money to drill wells in Rusk county, but could not recall any conversation with Evans in regard to the matter; that Evans was frequently in the office of witness, was sure Evans knew of the sale of these certificates, and knew all about how witness held the property, as this was explained to Evans, but witness failed to recall that, at the time of the transaction, he spoke to Evans in regard to

certificates; that Evans knew witness was holding the property as trustee for various parties, but as to the certificates and certificate holders, witness could not remember ever speaking to Evans about it, and did not think he mentioned to Evans the name of any person to whom acreage had been sold.

Elsewhere in the record it is shown that Joiner acted, not only for himself in holding these properties, but also as trustee for W. D. Tucker, A. D. Lloyd, and Sam Warren, joint owners of the syndicated leases. Evidently, these are the beneficiaries referred to by Joiner when he said: "I don't recall that we spoke of certificates at the time that we (Evans and himself) were consummating this deal, about the certificates, but he knew I was holding it (the lease) as trustee for various parties." Again, at the trial, Joiner was asked the following question: "Mr. Joiner, when you traded with Mr. Taylor and Mr. Evans, you told them this was a new lease, and you referred to your second lease and not to your first lease in the transfer you gave?" He answered, "Well, I think naturally I would have done that."

This evidence, in our opinion, warrants the conclusion, if it does not conclusively show, that defendants in error did not know of the existence of the outstanding certificates, at the time the 40-acre transaction with Joiner was consummated.

■ Plaintiffs in error insist, however, that the abstract of title examined by the attorney for defendants in error revealed the existence of a large number of certificates issued by Joiner, based, among others, upon the Finney lease. Evans, being examined on this point before the master, testified that his attorney called attention to the fact that, as shown by the abstract, there were certain units recorded, eighteen in number, this being the first notice witness had of their existence.

As before shown, the certificates to undivided interests in the syndicated acreage, issued by Joiner, were neither acknowledged by him, nor as to him were they otherwise properly probated for record, and although appearing of record, in the manner above stated, did not, in our opinion, constitute constructive notice to any one subsequently dealing with Joiner. However, if it can be said that the presence of the certificates upon the record, as revealed by the abstract, although improperly there, was sufficient to put one dealing with Joiner upon notice, which, if pursued, would have revealed the true situation, the question arises, What was the true situation? Comparison of the certificates, mentioned in the

abstract, with those repurchased by Joiner and assigned to plaintiffs in error, shows that only two certificates issued against syndicate No. 2 are mentioned, i. e., one of H. E. Ivie for ten acres, and one to Mrs. McDavid for four acres, so in no event could it be said that the abstract gave notice that Joiner had issued against syndicate No. 2 more than these two certificates, and even if the abstract put defendants in error upon notice to that extent, what would a reasonable inquiry have revealed? Simply that Joiner had issued certificates, based upon a lease that, by its own terms, had expired, hence not in conflict with any interest acquired from Joiner under the second lease.

After a careful consideration, all assignments are overruled, and the judgment of the court below is affirmed.

Affirmed.